## IN THE UNITED STATES DISTRICT COURT FOR THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS & ST. JOHN

Cathy Smith and Ramsey Smith

     *Plaintiffs*

     v.

 Ryan Meade and Nicole Meade

     *Defendants*

_____/

3:21-cv-

Action for Breach of Contract,
Breach of Duty of Good Faith and
Fair Dealing, Fraud, Misrepresentation, and
Unjust Enrichment

**BENCH TRIAL DEMANDED**

## VERIFIED COMPLAINT

### PARTIES

1. Plaintiffs, CATHY SMITH and RAMSEY SMITH (collectively "SMITHS") are natural persons, over 18 years of age, and competent adults who have an address of 9718 Estate Thomas, Ste 5A, St. Thomas, VI 00802, and are citizens, for diversity purposes, of the U.S. Virgin Islands.

2. Defendants, RYAN MEADE and NICOLE MEADE (collectively "MEADES") are natural persons, over 18 years of age, and competent adults who are citizens, for diversity purposes, of the state of Georgia.

### JURISDICTION AND VENUE

3. This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the Plaintiffs and the Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in the district of St. Thomas and St. John pursuant to 28 U.S.C. § 1391 as the MEADES are subject to jurisdiction of this Court, substantial parts of the acts and omissions occurred in this district, and the real property that is the subject of the action is situated in the district of St. Thomas and St. John.

5. The MEADES have contractually agreed that jurisdiction is proper in this court pursuant to 28 U.S.C. 1332.

6. Supplemental jurisdiction for Territorial law claims exists under 28 U.S.C. § 1367(a).

Smith v. Meade
3:21-cv-
Verified Complaint

## **NATURE OF THE ACTION**

7. The MEADES were the former owners of real property known as Parcel Nos 1-F-J/K and 1-P-1 Estate St. Joseph & Rosendal, St. Thomas, VI (the "Property").

8. On or about November 5, 2015, the MEADES and the SMITHS entered into a Real Property Purchase and Sale Agreement (the "Agreement" or "Purchase Agreement") to purchase the Property. *See attached Exhibit 1.*

9. The Purchase Agreement provided for the MEADES to 'seller finance' the Property for up to sixty (60) months:

   a. The SMITHS made an initial down payment of sixty thousand dollars ($60,000.00) (the "Down Payment").
   b. The SMITHS during the 'seller financing' period would make the mortgage payment (consisting of principal and interest) and escrow payments for the taxes and insurance premiums – this totaled three thousand dollars ($3,000.00) per month.
   c. Every month, one thousand dollars ($1,000.00) of the Down Payment would be applied to the payment made by the SMITHS and the remaining $2,000.00 would be paid monthly by the SMITHS.

   *See Exhibit 1, para. 2.*

10. On September 6, 2017, Hurricane Irma struck St. Thomas.

11. The Property was severely damaged as a result of Hurricane Irma.

12. On September 6, 2017, the Purchase Agreement was still 'active', the sale of the Property had not yet closed.

13. The Purchase Agreement made all proceeds from any insurance claim, in the event of total or partial destruction of the Property, the property of the SMITHS. *See Exhibit 1, para. 9.*

14. During the time of Hurricane Irma the property and casualty insurance on the Property was still held in the name of the MEADES.

15. The MEADES represented that the property and casualty insurance was adequate to cover any loss to the Property.

16. Although the Insurance Policy was still in the name of the MEADES, the SMITHS had been paying (or reimbursing the MEADES for) the premiums of the Insurance Policy since November 2015.

Smith v. Meade
3:21-cv-
Verified Complaint

17. The SMITHS had also been paying (or reimbursing the MEADES for) the mortgage payments on the Property since November 2015.

18. The property and casualty insurance for the Property was underwritten by Lloyd's of London under a policy sold by Miller Insurance Services LLP and given policy no. PRYAN000917 (the "Policy" or "Insurance Policy").

19. In order to help resolve the insurance claim under the Insurance Policy the MEADES and the SMITHS agreed to hire Capital Risk Group, LLC ("Capital Risk" or "Public Adjuster" or "PA") which was a public adjuster based in Cincinnati, Ohio and licensed to do business in the U.S. Virgin Islands. *See attached Exhibit 2 – public adjuster contract and certificate of insurance.*

20. Lon E. Pitre ("PITRE") was the individual for Capital Risk that would act as the public adjuster.

21. RYAN MEADE signed the agreement (*Exhibit 2*) to hire Capital Risk on or about January 31, 2018.

22. The MEADES and the SMITHS agreed, on or about May 31, 2018, that the proceeds from the insurance claim recovered from the Insurance Policy would be paid five percent (5%) to the MEADES, five percent (5%) to the Public Adjuster, and ninety percent (90%) to the SMITHS (the "Addendum"). *See attached Exhibit 3. That agreement did not provide for that amount to be reduced for attorneys' fees.*



INSURANCE FUNDS: Any insurance funds from the pending Hurricane Irma claim that become payable will be due as follows: 5% of the net insurance proceeds will be due to the hired PA, 5% of the net insurance proceeds will be due to the Owner and the remaining 90% of the net insurance proceeds will be due to Buyer for repairs to said property. Assuming there is no longer a lien from Owner's mortgagor, these funds will be deposited into the Ally Bank joint account within ten (10) days of receipt and disbursed accordingly. Thereafter the bank account will be closed.

Seller(s)

Ryan Meade

Nicole Meade

Buyer(s)

Catherine Koszarek Smith

Ramsey Smith

*Exhibit 3,* Insurance Funds Agreement

23. The agreement, pursuant to the Addendum, to pay the ninety percent (90%) of the insurance proceeds to the SMITHS was a material inducement for the SMITHS to close on the Property and proceed under the Purchase Agreement after the Property was damaged in Hurricane Irma.

Smith v. Meade
3:21-cv-
Verified Complaint

24. The Public Adjuster generated a report and estimated the loss on the Property in the amount of the full policy limits of $370,000.00.

25. The MEADES began to negotiate with the insurance company to settle and resolve the insurance claim on the Property.

26. The negotiation with the insurance company that the MEADES were performing was for the benefit of the SMITHS pursuant to the Addendum – the SMITHS were to receive 90% of the recovery from the insurance claim.

27. The SMITHS communicated with RYAN MEADE regarding the settlement of the insurance claim with respect to the Property.

28. On July 10, 2018 RYAN MEADE wrote via email:

Good morning Cathy,

I wanted to give you an update on the insurance claim and see what you wanted to do. WE are still very far apart and they are not willing to budge much on the negotiations. They are offering $94,000 to settle the claim, we've adjusted our claim at $370,000. At this point we have to make a choice, we can either accept the $94k (or maybe a little more) or we can move the claim into litigation and get lawyers involved. If we do the latter, I'm going to have my firm handle it, but I cannot do it personally since I may have to be a witness as well. Generally a law firm will charge 40% of the recovery, but because it's us and my firm I can do it for 33%. If we are successful it would increase the recovery to close to $250k.

Let me know your thoughts,

Ryan

Ryan C. Meade, Esq.

**Quintairos, Prieto, Wood & Boyer, P.A.**

(305) 924-7286 cellular

rmeade@qpwblaw.com

www.qpwblaw.com

*NOTICE:  This e-mail message and any attachment to this e-mail message contains confidential information that may be legally privileged. If you are not the intended recipient, you must not review, retransmit, convert to hard copy, copy, use or disseminate this e-mail or any attachments to it. If you have received this e-mail in error, please notify us immediately by return e-mail or by telephone at (305) 670-1101 and delete this message. Please note that if this e-mail message contains a forwarded message or is a reply to a prior message, some or all of the contents of this message or any attachments may not have been produced by Quintairos, Prieto, Wood & Boyer, P.A.*

Smith v. Meade
3:21-cv-
Verified Complaint

29. On July 20, 2018 RYAN MEADE wrote via email:

On Fri, Jul 20, 2018 at 5:29 PM, Ryan Meade <rmeade@qpwblaw.com> wrote:

At this point that really is the case, there is zero chance of no recovery, as it stands now the worst we could do it $95k. There is almost zero chance that we'd have to pay the other side's attorney fees, and if it does get to that unlikely point, we'd have the ability to stop the process and accept the $95k before that happens. If the recovery is just over $100k, then we'd have to give the 5% to Lon, but you'd still get the same net as if we took the $95k (I wouldn't steer you into a loss). So your net right now on $95k would be $84,500 ($95k – 10%). If the recovery was $120,000, you'd have to give 5% to Lon ($6k). The atty's fees (@33%) would be $39,600 which would be reduced to $29,500 so you'd still net $84,500.

I think the only down side for the litigation, especially at this point, is the time involved.

Ryan

Ryan C. Meade, Esq.

**Quintairos, Prieto, Wood & Boyer, P.A.**

(305) 924-7286 cellular

rmeade@qpwblaw.com

www.qpwblaw.com

*NOTICE: This e-mail message and any attachment to this e-mail message contains confidential information that may be legally privileged. If you are not the intended recipient, you must not review, retransmit, convert to hard copy, copy, use or disseminate this e-mail or any attachments to it. If you have received this e-mail in error, please notify us immediately by return e-mail or by telephone at (305) 670-1101 and delete this message. Please note that if this e-mail message contains a forwarded message or is a reply to a prior message, some or all of the contents of this message or any attachments may not have been produced by Quintairos, Prieto, Wood & Boyer, P.A.*

Smith v. Meade
3:21-cv-
Verified Complaint

30. CATHY SMITH responded:

**From:** Cathy Smith [mailto:cathy@vicoffeeroasters.com]
**Sent:** Tuesday, July 24, 2018 2:26 PM
**To:** Ryan Meade
**Subject:** Re: Insurance Adjuster Contact

Hi Ryan,

Sorry for the delay, this was a hard decision. Since (from what I understand) there is no way we will end up with less than what's currently on the table, we decided to go ahead with the litigation. I understand it may take around 6 months, so please just keep us posted on anything noteworthy or let us know if there is anything we can help with. We really appreciate everything you guys have and continue to do.

Many thanks,

**Cathy Smith** • 340.227.7349

virginislandscoffeeroasters.com

Smith v. Meade
3:21-cv-
Verified Complaint

31. Approximately six (6) weeks later RYAN MEADE responded:

**From:** Ryan Meade
**Sent:** Thursday, September 06, 2018 3:46 PM
**To:** 'Cathy Smith'
**Subject:** RE: Insurance Adjuster Contact

Cathy,

Just wanted to give you an update on this, the carrier has increased their offer to $131,494.12 so we are moving in the right direction. So that would be $6,574.71 to Lon, then $43,393.05 in attorney's fees (reduced to $40,419.41) so you still net $84,500. I don't think we should accept this as the number should continue to go in the upward direction as we press forward. Out last demand was $370k (policy limits), if they ask I'm going to try and negotiate down to $300k and keep pushing for appraisal. Like I said, I expect that this should resolve somewhere between $200k and $300k.

I will keep you posted, I expect to hear from him next week. I'd like to keep this going until after we close on the sale, that way we don't have to worry about paying any of the proceeds to the mortgage holder (who will get paid off at the closing).

Ryan

32. On November 30, 2018, the Property closed via recorded Warranty Deed. *See attached Exhibit 4.*

Smith v. Meade
3:21-cv-
Verified Complaint

33. On December 18, 2018, a few weeks after the closing on the Property, RYAN MEADE wrote via email:

> On Tue, Dec 18, 2018 at 10:31 AM Ryan Meade <rmeade@qpwblaw.com> wrote:
>
> Cathy,
>
> Here is an update. The insurance company has agreed to increase their settlement offer from $95,000 to $150,000.00 without a release, I am just waiting on the satisfaction of mortgage from the sale so the proceeds can go to me directly. Once I get the check, I will send Lon his 5% payment ($7,500.00) and reduce the attorney fees from $49,500 to $39,500 leaving **$84,500.00** going to you now. We can continue to seek additional coverage, but this at least guarantees that we will do no worse off than when they were only offering the $95k and we decided to litigate.
>
> Where would you like the proceeds sent once I get them?
>
>
> Ryan
>
>
> Ryan C. Meade, Esq.
>
> **Quintairos, Prieto, Wood & Boyer, P.A.**
>
> (305) 924-7286 cellular
>
> rmeade@qpwblaw.com
>
> www.qpwblaw.com
>
>
> *NOTICE: This e-mail message and any attachment to this e-mail message contains confidential information that may be legally privileged. If you are not the intended recipient, you must not review, retransmit, convert to hard copy, copy, use or disseminate this e-mail or any attachments to it. If you have received this e-mail in error, please notify us immediately by return e-mail or by telephone at (305) 670-1101 and delete this message. Please note that if this e-mail message contains a forwarded message or is a reply to a prior message, some or all of the contents of this message or any attachments may not have been produced by Quintairos, Prieto, Wood & Boyer, P.A.*

34. On December 18, 2018 – without informing the SMITHS – the MEADES, through Ryan Meade, signed a sworn proof of loss in order to receive the first interim payment of $150,000.00.

35. The MEADES never revealed to the SMITHS on December 18, 2018 that no lawyer had actually instituted any litigation or performed any legal work, *see supra*, and instead false represented that lawyers fees were due to some 'attorney' – in reality the MEADES were stealing this money for their own benefit.

Smith v. Meade
3:21-cv-
Verified Complaint

36. CATHY SMITH wrote to RYAN MEADE on December 19, 2018 inquiring (among other things) as to what "without a release' mean[s] in the insurance world".

From: Cathy Smith <cathy@vicoffeeroasters.com>

Date: 12/19/18 11:40 AM (GMT-05:00)

To: Ryan Meade <rmeade@qpwblaw.com>

Cc: Ramsey Smith <ramsey@vicoffeeroasters.com>

Subject: Re: Insurance Adjuster Contact


Hey Ryan,


Glad to hear there is some movement... unfortunately though, we are still at the same place we started even before Lon when they offered the $95,000.


If we stick with it another 2-3 months do you think we might get somewhere so our payout also increases? We still have some time on our end.


Also, what does "without a release" mean in insurance world?


Happiest of holidays to you and the family!


**Cathy Smith** • 340.227.7349

virginislandscoffeeroasters.com

Smith v. Meade
3:21-cv-
Verified Complaint

37. RYAN MEADE responded that "w/o a release means, that we can continue to fight and pursue additional recovery" from the insurance company.



On Wed, Dec 19, 2018 at 12:02 PM Ryan Meade <rmeade@qpwblaw.com> wrote:

That is what w/o a release means, that we can continue to fight and pursue additional recovery w/o risking the $150k we are getting.

Kind regards,

Ryan C. Meade

rmeade@qpwblaw.com

(305) 924-7286

38. On February 25, 2019 RYAN MEADE wrote to CATHY SMITH that MEADE "got the check today".

On Mon, Feb 25, 2019 at 12:00 PM Ryan Meade <rmeade@qpwblaw.com> wrote:

I got the check today. I will deposit and send funds this week!

Sent via the Samsung Galaxy S8 Active, an AT&T 5G Evolution smartphone

39. The MEADES eventually sent the SMITHS a check for $84,500.00 in February 2019.

40. The MEADES represented that this amount was an 'interim settlement' and that the rest of the claim would be pursued with the insurance company – the claim would belong 90% to the SMITHS.

41. The MEADES represented that the $150,000.00 interim payment (received in February 2019) would be payable as follows:

    a. $7,500.00 (5%) to Capital Risk/Pitre.
    b. $7,500.00 (5%) to the MEADES.
    c. $39,500.00 for "lawyers' fees" – which the MEADES represented were earned by Quintarios, Prieto, Wood & Boyer, P.A. ("QPWB") (the firm where RYAN MEADE was a law partner) pursuant to a contingency fee arrangement where

Smith v. Meade
3:21-cv-
Verified Complaint

QPWB would keep 33% of the proceeds of the insurance settlement.[1]  However, the MEADES actually kept an additional $50,500.00.

    d.  $84,500.00 to the SMITHS which was supposed to represent 90% of the claim.

42. The MEADES represented that they were continuing to pursue the full and final resolution of the insurance claim.

43. On June 19, 2019, the MEADES signed a Release and Settlement Agreement to fully and finally resolve the insurance claim and receive a payment of $110,000.00.  *See Exhibit 7 and 8.*

44. The MEADES signed the final Release and Settlement Agreement without any sort of notification to the SMITHS, despite the fact that the insurance settlement was contractually agreed to be 90% for the benefit of the SMITHS.

45. The MEADES were under an obligation to confer with the SMITHS regarding the settlement of the insurance claim.

46. The MEADES did not inform the SMITHS that there was a final settlement and that the MEADES received an additional $110,000.00 – the MEADES stole these funds for their own benefit.

47. It is now known that the $110,000.00 check was sent to the MEADES with a letter dated July 2, 2019.

48. In December of 2020 the MEADES gave the SMITHS an additional check for $4,800.00.

49. It was not until December 2020 that the MEADES told the SMITHS that this would be the 'final payment' related to the insurance claim on the Property.

---

[1] As set forth *supra*, there was never any 'litigation' and QPWB, for the first time on July 27, 2021, through its managing partner Eric Boyer denies that QPWB ever represented any party in the settlement of this insurance matter.  This money was wrongfully converted by the MEADES.

However, this fictitious 'contingency fee arrangement' is in violation of the *Virgin Islands Rules of Professional Conduct 211.1.5(c)* which **requires** that: "**A contingent fee agreement shall be in a writing signed by the client** and shall state the method by which the fee is to be determined, including the percentage or other percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be liable whether or not the client is the prevailing party. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination." (emphasis added).

A separate complaint to the Virgin Islands Office of Disciplinary Counsel has been filed by the Plaintiffs.

Smith v. Meade
3:21-cv-
Verified Complaint

50. The MEADES concealed from the SMITHS that the SMITHS were due over $125,000.00 from the insurance settlement – this money was stolen by the MEADES.

51. The MEADES did not disclose to the Smiths the amount of the total final settlement for the insurance claim.

52. The SMITHS made multiple demands for a 'settlement statement' and final accounting of the insurance proceeds.

53. As late as July 16, 2021, RYAN MEADE, via email, represented that he requested settlement statements from the insurance company but had not received them – to date the MEADES refused and/or failed to provide a full and final accounting to the SMITHS.  *See Exhibit 9.*

54. In the July 16, 2021 correspondence RYAN MEADE never truthfully stated that QPWB (or any other lawyer) **were never hired** despite reference by the SMITHS to 'QPWB keeping 33% of the recovery of the insurance settlement' – the MEADES had an opportunity to correct their previous false and fraudulent statements and return the money that they had converted, yet failed to do so.

55. In the July 16, 2021 correspondence the MEADES never truthfully told the SMITHS that the insurance claim was settled for a gross settlement amount of $260,000.00; the MEADES never told the SMITHS that the MEADES had stolen over $125,000.00 from the SMITHS.

56. Until Eric Boyer confirmed (see *supra*) on July 27, 2021 that QPWB never performed any legal work on this matter, the SMITHS were not, and could not be, aware of the wrongdoing by the MEADES.

57. Despite the representations by the MEADES, **no lawyer was ever hired** and QPWB (through their managing partner Eric Boyer) maintains, to this day, that QPWB never performed any legal work on this matter and never received any legal fees related to this matter.  *See Exhibit 6.*

58. Eric Boyer, on behalf of QPWB, for the first time on July 27, 2021, represented that QPWB **never undertook any legal work** with respect to this insurance claim and never received any legal fees.  Attorney Boyer proclaimed that this was a "personal matter" between Ryan Meade and the SMITHS.

59. At the time the MEADES represented to the SMITHS that the MEADES had in fact hired a lawyer and made payments to a lawyer, the MEADES were aware that representation was materially false.

60. Despite the fact that the MEADES never retained any counsel on this matter, the MEADES (mis)represented to the SMITHS that attorneys' fees were due, payable, and withheld a non-existent "contingency fee" from the SMITHS payment, the MEADES

Smith v. Meade
3:21-cv-
Verified Complaint

intended the SMITHS to rely on that materially false representation, that was made for the purpose of inducing the SMITHS to accept less money than the SMITHS were entitled to under the Addendum.

61. The SMITHS justifiably relied on the MEADES material misrepresentation and suffered pecuniary loss as a result of their justifiable reliance on the MEADES material misrepresentations related to 'attorneys' fees' and the proper prosecution of the insurance claim.

62. In fact, the MEADES[2] kept the "attorneys' fees" for themselves – which is an outright theft of money due and owing to the SMITHS.

63. The SMITHS have repeatedly requested that the MEADES give a full and final accounting of the settlement of the insurance claim – the MEADES have refused to do so.

64. The MEADES owed a fiduciary duty to the SMITHS for a fully and proper accounting of the insurance proceeds – the MEADES have failed to properly account for all of the proceeds received from the insurance settlement related to the Property despite repeated demand from the SMITHS.

65. The MEADES stole over $125,000.00 from the SMITHS related to the insurance claim – this theft occurred in late 2018/early 2019 and June 2019. The MEADES continued to conceal the theft and wrongdoing long after the actual theft by continuing to lie to the SMITHS and obfuscate the true settlement amount.

66. The MEADES helped to conceal their theft by:

    a. Forcing a closing on the Property prior to the final settlement of the insurance claim;

    b. Forcing a payoff of the mortgage on the Property prior to the full settlement of the insurance claim;

    c. Obtaining a letter from the Public Adjuster, prior to the final settlement of $110,000.00, which stated that the Public Adjuster was fully paid, even though the MEADES failed to fully pay the Public Adjuster the amount due – the MEADES also stole money from the Public Adjuster.

## COUNT 1 - BREACH OF CONTRACT

67. The SMITHS repeat and reallege all the foregoing paragraphs as though fully set forth herein.

---

[2] NICOLE MEADE is not licensed to practice law in any jurisdiction and therefore could never be entitled to 'attorneys' fees'. *See Virgin Islands Rule of Professional Conduct 211.5.4(a)*("A lawyer shall not share legal fees with a nonlawyer… .)"

Smith v. Meade
3:21-cv-
Verified Complaint

68. The SMITHS and the MEADES had a written agreement, the Addendum.

69. The Addendum required the MEADES to pursue the recovery of the insurance funds related to the Hurricane Irma damage to the Property.

70. The Addendum required the MEADES to pursue the recovery of the insurance funds for the substantial (90%) benefit of the SMITHS.

71. The Addendum required the MEADES to pay ninety percent (90%) of the insurance proceeds to the SMITHS.

72. The MEADES breach the agreement with the SMITHS in material ways which include, but are not limited to, failing to pay the SMITHS the ninety percent (90%) of the insurance proceeds and stealing over $125,000.00 from the SMITHS.

73. The SMITHS have been damaged as a result of the breach of contract by the MEADES and are entitled to compensatory, incidental, and consequential damages for their conduct, as well as for all costs, expenses, attorneys' fees, and interest.

## <u>COUNT 2 – BREACH OF GOOD FAITH AND FAIR DEALING</u>

74. The SMITHS repeat and reallege all the foregoing paragraphs as though fully set forth herein.

75. The SMITHS and the MEADES had a contract, the Addendum.

76. In the performance of the contract (the Addendum), the MEADES engaged in fraudulent and deceitful conduct – namely, fabricating 'attorneys' fees' in order to steal money directly from the SMITHS for the personal benefit of the MEADES.

77. The fraudulent and deceitful conduct of the MEADES was inconsistent with the reasonable expectations of the SMITHS – the SMITHS reasonably expected that the MEADES would be honest with the SMITHS and not steal money for fraudulent 'attorneys' fees'.  This belief was further reasonable because RYAN MEADE is a practicing lawyer and a member of the Virgin Islands bar[3].  NICOLE MEADE is not licensed to practice law in any jurisdiction – the receipt of any money by NICOLE MEADE for purported 'attorneys' fees' would be prima facie evidence of the unauthorized practice of law.

78. The fraudulent and deceitful conduct of the MEADES occurred during the time of the performance of the Addendum and after the time for the performance of the Addendum had ended.

---

[3] RYAN MEADE was a partner in the law firm QPWB and represented to the SMITHS that he had expertise in valuing and resolving the insurance claim.  See https://www.qpwblaw.com/attorney-profile/?310-Ryan-C_-Meade (last visited on July 30, 2021)

Smith v. Meade
3:21-cv-
Verified Complaint

79. The fraudulent and deceitful conduct of the MEADES was inconsistent with the reasonable expectations of the SMITHS – the SMITHS reasonably expected that the MEADES would pursue the insurance claim for the full value of the insurance claim, which the MEADES represented on multiple occasions should settle and resolve for between $200,000 - $300,000, and which was 90% for the benefit of the SMITHS.

80. After the Property closed on November 30, 2018, and the MEADES stole approximately $130,000.00 from the SMTIHS.

81. The SMITHS have been damaged as a result of the breach of the duty of good faith and fair dealing by the MEADES and are entitled to compensatory, incidental, and consequential damages for their conduct, as well as for all costs, expenses, attorneys' fees, and interest.

## COUNT 3 – FRAUD (*in the alternative*)

82. The SMITHS repeat and reallege all the foregoing paragraphs as though fully set forth herein.

83. The MEADES, through RYAN MEADE, made numerous false representations, in writing, via email, which are attached as *Exhibit 5*. These writings show with specificity the time, date, manner, and exact fraudulent representations of the MEADES which the SMITHS now know to be false and fraudulent.

84. The MEADES specifically represented that the MEADES hired a lawyer or law firm – QPWB - to 'litigate' the insurance claim to full resolution and that the MEADES would prosecute the insurance claim to maximum recovery.

85. This fraudulent conduct, while ancillary related to the Addendum and contractual relationship between the parties, is actually a separate and distinct tort that was independently done in order to steal money from the SMITHS.

86. This representation by the MEADES was a false representation and was a material fact in the relationship with the SMITHS – the SMITHS believed that QPWB (and the MEADES) would properly pursue the recovery of the insurance claim and remit the appropriate payment (90%) to the SMITHS.

87. This representation was false in at least three (3) respects:

   a. QPWB, or any other lawyer, was never hired – the hiring of a lawyer to work on a contingency fee basis is required to be in writing pursuant to *Virgin Islands Rules of Professional Conduct 211.1.5(c)*. Eric Boyer, managing partner of QPWB, has confirmed that QPWB was never hired to perform work on this matter.

b. The MEADES falsely represented that 'attorneys' fees' were due and owing to lawyers – this is false and the MEADES simply kept the approximately $40,000 that the MEADES falsely represented was to pay 'attorneys' fees'.

c. The MEADES falsely represented the insurance claim resolved for a total of $150,000.00 – this is false, the insurance claim, as represented by the MEADES was to settle for more than $250,000.00 and the MEADES kept the balance of the insurance money – over $125,000.00 was stolen by the MEADES.

88. The SMITHS, at the time these representations were being made by the MEADES, were not aware that these representations were false and would have no reason to believe that the MEADES, especially through RYAN MEADE – a practicing lawyer – would be making fraudulent and false statements.

89. The MEADES obviously intended for the SMITHS to act (or not to act) on the false and fraudulent (mis)representations of the MEADES – the MEADES wanted the SMITHS to accept the money the MEADES paid to the SMITHS, ignore the theft by the MEADES, and have the SMITHS not pursue the rightful amounts due to them from the insurance settlement.

90. The SMITHS actually relied on the false and fraudulent (mis)representations of the MEADES, and have done so to their detriment by being deprived of the over $125,000 that the SMITHS should receive from the insurance settlement.

91. The MEADES made the false and fraudulent statements knowingly and intentionally, with malice aforethought, for the purpose of stealing money from the SMITHS.

92. In addition, the MEADES did not report the stolen money as income – this is likely the commission of tax fraud.

93. The SMITHS have been damaged as a result of the breach of the fraud by the MEADES and are entitled to compensatory, incidental, consequential damages, and unlimited punitive damages for their conduct, as well as for all costs, expenses, attorneys' fees, and interest.

## **COUNT 4 – MISREPRESENTATION (*in the alternative*)**

94. The SMITHS repeat and reallege all the foregoing paragraphs as though fully set forth herein.

95. The MEADES, through RYAN MEADE, made numerous false representations, in writing, via email, which are attached as *Exhibit 5*. These writings show with specificity the time, date, manner, and exact fraudulent representations of the MEADES which the SMITHS now know to be false and fraudulent.

Smith v. Meade
3:21-cv-
Verified Complaint

96. The MEADES specifically represented that the MEADES hired a lawyer or law firm – QPWB - to 'litigate' the insurance claim to full resolution and that the MEADES would prosecute the insurance claim to maximum recovery.

97. This representation by the MEADES was a false representation and was a material fact in the relationship with the SMITHS – the SMITHS believed that QPWB (and the MEADES) would properly pursue the recovery of the insurance claim and remit the appropriate payment (90%) to the SMITHS.

98. This representation was false in at least three (3) respects:

   a. QPWB, or any other lawyer, was never hired – the hiring of a lawyer to work on a contingency fee basis is required to be in writing pursuant to *Virgin Islands Rules of Professional Conduct 211.1.5(c)*. Eric Boyer, managing partner of QPWB, has confirmed that QPWB was never hired to perform work on this matter.
   b. The MEADES falsely represented that 'attorneys' fees' were due and owing to lawyers – this is false and the MEADES simply kept the approximately $40,000 that the MEADES falsely represented was to pay 'attorneys' fees'.
   c. The MEADES falsely represented the insurance claim resolved for a total of $150,000.00 – this is false, the insurance claim, as represented by the MEADES actually settled for $260,000.00 and the MEADES kept the balance of the over $125,000.00 in insurance money – 90% which is due and owing to the SMITHS.

99. The SMITHS, at the time these representations were being made by the MEADES, were not aware that these representations were false and would have no reason to believe that the MEADES, especially through RYAN MEADE – a practicing lawyer – would be making fraudulent and false statements.

100. The MEADES obviously intended for the SMITHS to act (or not to act) on the false and fraudulent (mis)representations of the MEADES – the MEADES wanted the SMITHS to accept the money the MEADES paid to the SMITHS, ignore the theft by the MEADES, and have the SMITHS not pursue the rightful amounts due to them from the insurance settlement.

101. The SMITHS actually relied on the false and fraudulent (mis)representations of the MEADES, and have done so to their detriment by being deprived of the over $125,000 additional money that the SMITHS should have received from the insurance settlement.

102. The SMITHS have been deprived of the use of this money for well over two years while the MEADES have lived a lavish lifestyle, purchasing multiple pieces of real property and going on lavish vacations.

103. The MEADES failed to exercise reasonable care in the communication of the (false) statements as set forth herein. The MEADES actually intended to communicate

the false statements to the SMITHS, made the communications via email, and made the email communications from RYAN MEADE'S email account at QPWB – rmeade@qpwblaw.com.

104.    The SMITHS have been damaged as a result of the breach of the fraud by the MEADES and are entitled to compensatory, incidental, consequential damages, and unlimited punitive damages for their conduct, as well as for all costs, expenses, attorneys' fees, and interest.

## COUNT 5 – UNJUST ENRICHMENT (*in the alternative*)

105.    The SMITHS repeat and reallege all the foregoing paragraphs as though fully set forth herein.

106.    The MEADES have retained in excess of $125,000.00 that was payable to the SMITHS, which has enriched the MEADES.

107.    At least part of the money retained by the MEADES was purported to be for 'attorneys' fees' – that representation was fraudulent as set forth herein.

108.    The enrichment of the MEADES was for money that was specifically to go to the SMITHS – the enrichment of the MEADES was at the expense of the SMITHS.

109.    The SMITHS have been further damaged, and the MEADES further enriched, by the SMITHS paying full price for a hurricane damaged home while the MEADES kept the insurance proceeds – the MEADES have been enriched twice, one by full payment for the Property, second by wrongfully keeping insurance proceeds that were not for their benefit.

110.    The MEADES had appreciation and knowledge of the unjust benefit that the MEADES received by wrongfully retaining the money and fraudulently claiming 'attorneys' fees' were payable from the money – RYAN MEADE is an experienced attorney, NICOLE MEADE is not licensed to practice law in any jurisdiction, and intentionally made the misrepresentations that formed the basis for the MEADES wrongfully keeping the money owed to the SMITHS.

111.    There is no question that the circumstances in the present case require, in both equity and good conscience, that the MEADES provide the SMITHS the full value of the SMITHS portion (90%) of the maximized insurance claim.

112.    The SMITHS have been damaged as a result of the breach of the fraud by the MEADES and are entitled to compensatory, incidental, consequential damages, and unlimited punitive damages for their conduct, as well as for all costs, expenses, attorneys' fees, and interest.

Smith v. Meade
3:21-cv-
Verified Complaint

## COUNT 6 – CONVERSION (*in the alternative*)

113.   The SMITHS repeat and reallege all the foregoing paragraphs as though fully set forth herein.

114.   The SMITHS had, and have, an ownership interest in the SMITHS portion (90%) of the maximized insurance claim; this includes, but is not limited to, the purported 'attorneys' fees' that were wrongfully kept by the MEADES.

115.   The SMITHS are, and have been, entitled to immediate possession of the SMITHS portion (90%) of the maximized insurance claim.

116.   The MEADES have unlawfully, and without authorization, retained and withheld this property from the SMITHS for over two (2) years.

117.   Disturbingly, the false and fraudulent statements and representations that the MEADES hired QPWB (where RYAN MEADE was a partner) to 'litigate' the insurance claim for the benefit of the SMITHS were unethical and false *ab initio* because a contingency fee legal agreement is required to be in writing and signed by the client.  *See Virgin Islands Rules of Professional Conduct 211.1.5(c)*.

118.   The SMITHS have been damaged as a result of the breach of the fraud by the MEADES and are entitled to compensatory, incidental, consequential damages, and unlimited punitive damages for their conduct, as well as for all costs, expenses, attorneys' fees, and interest.

## COUNT 7 – BREACH OF FIDUCIARY DUTY/ACCOUNTING

119.   The SMITHS repeat and reallege all the foregoing paragraphs as though fully set forth herein.

120.   The MEADES had, and have, a fiduciary duty to the SMITHS to fully and finally account for all proceeds received from the insurance settlement related to the Property.

121.   The MEADES owed the fiduciary duty to the SMITHS because the MEADES undertook to solely and exclusively negotiate and communication with the insurance company in furtherance of the settlement of the insurance claim on the Property for the SMITHS' benefit.

122.   The MEADES had sole control of the settlement process and exercised a high degree and exclusive responsibility of the settlement process for the benefit of the SMITHS.

Smith v. Meade
3:21-cv-
Verified Complaint

123.   The MEADES have failed to properly pursue, account for, and/or remit the settlement funds to the SMITHS – instead the MEADES have improperly retained funds due and owing to the SMITHS.

124.   The SMITHS have repeatedly requested a full and final account from the MEADES related to the insurance settlement.

125.   The MEADES have refused to provide the SMITHS with any such accounting.

126.   The MEADES have breached the fiduciary duty to the SMITHS by not acting with the required duty of loyalty, care, and diligence to the SMITHS in the resolution, accounting, and disbursement of the insurance settlement proceeds related to the Property.

127.   The MEADES failed to act in the best interest of the SMITHS in the negotiation and settlement of the insurance claim related to the Property and the disbursement of the funds.

128.   The MEADES improperly retained funds – in excess of $125,000.00 - for their own personal benefit when those funds were due to the SMITHS, which has, and continues to, damage the SMITHS.

129.   The SMITHS have been damaged as a result of the breach of the fraud by the MEADES and are entitled to compensatory, incidental, consequential damages, and unlimited punitive damages for their conduct, as well as for all costs, expenses, attorneys' fees, and interest.

130.   The SMITHS further request that this court order an accounting of all funds paid to the MEADES in settlement of the insurance claim related to the Property.

Smith v. Meade
3:21-cv-
Verified Complaint

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully demand judgment be entered in favor of Plaintiffs

and against Defendants, and that Plaintiffs be awarded the following:

a.  Compensatory damages;

b.  Incidental damages;

c.  Consequential damages;

d.  An Accounting of all funds received by the MEADES in settlement of the insurance claim;

e.  Lost past and future income;

f.  Punitive damages;

g.  Statutory interest;

h.  Attorney's fees and costs;

i.  Any other relief deemed appropriate.


Plaintiffs demand a bench trial.

Respectfully submitted,
**Michael L. Sheesley, P.C.**

Dated: October  15, 2021

s/Michael L. Sheesley
Michael Sheesley
V.I. Bar No. 1010
P.O. Box 307728
St. Thomas, VI 00803
(412)972-0412
michael@sheesley-law.com

Smith v. Meade
3:21-cv-
Verified Complaint

## VERIFICATION

Cathy Smith, pursuant to *V.I.R.Civ.P. 84* and *28 U.S.C. 1746,* being first duly sworn, states that she has read the foregoing Complaint; that she is familiar with the contents thereof; and she declares under the penalty of perjury that the facts stated therein are true and correct.

DATED: _____8/2/21_____     _____
                                              Cathy Smith

## VERIFICATION

Ramsey Smith, pursuant to *V.I.R.Civ.P. 84* and *28 U.S.C. 1746,* being first duly sworn, states that he has read the foregoing Complaint; that he is familiar with the contents thereof; and he declares under the penalty of perjury that the facts stated therein are true and correct.

DATED: _____8-2-21_____     _____
                                              Ramsey Smith